**Gaetano VASTANO, Libelant,**

v.

**The PARTOWNERSHIP BROVIGTANK,**
Respondent.

No. 19-785.

United States District Court
E. D. New York.

June 28, 1957.

Philip F. Di Costanzo, Brooklyn, N. Y., for libelant.

Pyne, Brush, Smith & Michelsen, New York City, for respondent.

REEVES, District Judge.

About 11 o'clock A.M., January 27, 1951, the libelant claimed that he suffered an injury or injuries by reason of a fall on the deck of the S. S. Bertha Brovig owned by the respondent.

At that time the said steamship was moored alongside the pier at the foot of 53rd Street in the Borough of Brooklyn, New York. She was taking on cargo. The libelant was at the head of a crew of longshoremen engaged in loading the vessel. It was the libelant's duty to supervise, as boss, the taking on or loading of cargo in the several hatches of the ship. This duty required him to pass from one hatch to another at frequent intervals. In discharging this function, he claims that because of the slippery condition of the deck he fell near a winch located slightly aft of No. 2 Hatch.

Asserting permanent injuries and that he suffered from physical or bodily pains, he brought suit against the respondent, alleging, among other things, that the place on the deck where he fell was made slippery from water, oil and grease, permitted to escape from the equipment of the ship, and from snow which began falling at eight o'clock in the morning and continued to fall until one o'clock in the afternoon.

The libelant says in his complaint, or libel, that by reason of the ice and oil and snow on the deck, the ship was not seaworthy, and, moreover, a reasonably safe place to work had not been provided for him in the exercise of ordinary care.

The evidence tended to show that it was cold and below freezing. Early in the morning the thermometer stood at 24, and at 10 a. m. at 27 degrees above zero.

In loading and unloading cargo, for power purposes, winches were used. At intervals when not in use the steam in the pipes condenses into water, and, when operations again start, such water must be released through valves, and, unless confined in a container, it spreads over the deck. Furthermore, the winches require oiling. There was evidence that this oil, or part of it, escaped upon the deck and spread, as in the case of the water. The low temperature caused the water to freeze, and the deck around the said after winch at No. 2 Hatch became slippery. It was undisputed that some snow was falling, whether one inch or less, it was apparently sufficient to obscure the icy and oily condition of the deck.

It was the duty of the boatswain, the first mate, and probably other officers of the ship, to make constant surveys of the deck so as to remove hazards, such as falling snow, and ice, water, and oil that might escape to the deck from the operation of the equipment. This survey was made by them and their evidence was, in effect, that they had observed neither ice nor oil upon the deck. There was no contra-proof as to the libelant having fallen. The evidence by several witnesses, as well as his own testimony, was that he slipped and fell heavily upon the deck, striking his head on the coaming of No. 2 Hatch as he fell.

Physicians for both parties testified with respect to the injuries claimed by libelant.

Other facts, as they become pertinent, will be stated in the course of this memorandum opinion.

1. It is the law that a longshoreman engaged in the performance of his duties, while aboardship in port, is en-

titled to the same rights and protection as an able seaman at sea.

■ If an icy and oily condition had formed on the deck, as contended by libelant, it then became the duty of the ship's crew to remove such hazardous condition, and, if the libelant suffered injuries by reason of such hazards, he would be entitled to recover on the two-fold ground: (a) that the ship was not in a seaworthy condition, and (b) that the owner was negligent in not using ordinary care to provide him with a reasonably safe place in which to work.

■ It is a reasonable inference from the evidence that the water habitually released from the winches, when in use, and, that, without containers, such water spreads over the decks. The boatswain and the first mate are chargeable with knowledge of this fact. Moreover, with a freezing temperature they knew, or should have known, that the water would freeze and constitute a slippery condition on the deck in the vicinity of the winch from which the water flowed. Apparently the snow, admittedly falling throughout the forenoon of that day, was sufficient to conceal or obscure the icy condition of the deck where the libelant slipped and fell. Under such circumstances, the respondent becomes liable on the two-fold ground: (a) permitting the ship to become unseaworthy, and (b) a failure to use ordinary care to furnish a reasonably safe place for libelant to work. See Pacific Far East Lines, Inc., v. Williams, 9 Cir., 234 F.2d 378.

2. The only other question for determination is the extent of libelant's injuries, and the award that should be made to him. His symptoms were mostly subjective. However, his subjective complaints were such, when associated with the manner of his fall, namely falling hard on his back, striking his head against the coaming of the hatch (and even falling a second time as he assayed to arise) that the experts (physicians) said that such complaints resulted from the fall.

Several physicians whose testimony was taken in the case said that they diagnosed his condition as resulting from the fall, and that he had suffered, among other things, serious damage to the eighth cranial nerve. This deranged the blood supply to his ear or ears, and that his deafness and vertigo and other symptoms reasonably flowed from his fall. These were able and distinguished physicians. It was the consensus of expert opinions that he was disabled and permanently incapable of returning to the position and work formerly done by him. This will be set forth more fully in the Findings of Fact filed with this opinion.

3. The evidence showed that, during the last three years before his injury, libelant had an average annual income of over $7,000. During the three years following his injury, he could do little, or nothing. Since that time he has had work from friendly employers. This work did not amount to much, and it was in evidence that he was not required to do much manual labor or exercise judgment.

■ A trier of facts under the law is obliged to treat the evidence of witnesses as truthful. It should always be accepted and harmonized upon the theory that the witness is truthful and endeavoring to tell the truth. While counsel for the respondent, in an able and learned brief, has vigorously challenged the accuracy and reliability of much of the testimony, whether lay or otherwise, yet no valid reason has been assigned why the court should reject the evidence of such witnesses or any part of it. If the libelant be disabled, as testified by these medical experts, then he is entitled to be compensated by a substantial judgment or decree in his behalf.

■ While he had a life expectancy of more than eighteen years at the time of his injury (he being then 56 years of age) yet his work expectancy could not be so long. He lost an income for three years. It may be doubted that such income would have been equal to that earned by him during the preceding three years. This was more than $21,000. During the preceding three years his income was declining. It had declined

from $8,160 to $5,300. The cause of this decline was not explained.

■ Twenty Thousand Dollars would appear to be a reasonable allowance for loss of income during the three year period. He should be compensated for the present value of past as well as future earnings, and also compensated for pain and suffering and the permanency of his multiple injuries. This should include embarrassment, humiliation, and inability to engage in normal activities of a man without these injuries. He still has capacity to do some work. Twenty-five Thousand Dollars would seem to be a reasonable amount. A decree should be entered in his behalf for the total sum of Forty-five Thousand Dollars.